CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/16/2022
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JARED HESTER<br><br>      *Plaintiff*,<br><br>v.<br><br>WASHINGTON & LEE UNIV.,<br><br>      *Defendant.* | CASE NO. 6:22-cv-00002<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  This case comes before the Court on Defendant's motion to dismiss, Dkt. 15. Seeking redress under Title IX, Plaintiff Jared Hester alleges three instances of discrimination based on sexual orientation and gender stereotyping while a student at Washington & Lee University between 2009 and 2013, as well as general discrimination based on race, religion, and sexual orientation. He alleges that the discrimination led to him attempting suicide; deciding to withdraw from college three months before graduating; and experiencing anxiety, depression, and financial instability, among other personal problems. He seeks money damages to recover probable lost wages and career and educational opportunities, emotional distress, and psychological damage. He also seeks punitive and exemplary damages against the university for "acting recklessly by actively recruiting gay students to campus without making efforts to change and rectify the institutions [sic] homophobic present and past," as well as for poorly responding to his attempted suicide while he was a student there. Dkt. 1 at 5.

  In January 2022, Plaintiff, proceeding *pro se*, filed this action against Defendant Washington & Lee University in this Court. Defendant subsequently filed a motion to dismiss

the complaint. Dkt. 15. The motion has been fully briefed, Dkts. 15, 18, 23, and the motion is ripe for decision.[1]

## Background

The following facts are alleged in Plaintiff's complaint and assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (reiterating the appropriate standard of review).

Plaintiff alleges that he applied to Washington & Lee University in 2009 at the age of 17, and he stated on the application that he was a member of the LGBT community, in addition to belonging to other minority communities, such as the African-American and Jewish community. Dkt. 1-2 ("Compl.") ¶ 1. Plaintiff attended Washington & Lee University between 2009 and 2013. Dkt. 1 at 4. While enrolled, Plaintiff "was invited to be part of LGBT, African-American, and Jewish student groups." Compl. at 1 ¶ 6. Throughout attending the university, Plaintiff "was harassed and belittled by students, and by one professor, for being black, for being Jewish, and for being gay (usually not in combination but separately)." *Id.* at 2 ¶ 7. Plaintiff experienced a range of harassment acts. *Id.* at 2 ¶ 8. Plaintiff alleges that "[t]he worst acts occurred to [him] about [his] sexuality." *Id.* at 2 ¶ 9.

During Plaintiff's time as a student at the university, he was harassed verbally by Washington & Lee students while a few streets from Washington & Lee's campus. Dkt. 1 at 5. Plaintiff was harassed by others, who may or may not have been Washington & Lee students, while on Washington & Lee's campus. *Id.* On both occasions, the men who harassed Plaintiff

---

[1] The Court dispenses with oral argument, considering the issues requiring resolution and the parties' positions fully developed in their written memoranda.

– 2 –

"did so about [his] known and presumed sexual orientation . . . and about [his] female-gendered choice of clothing in the second instance." *Id.* On a third occasion, Plaintiff "was harassed [because of his sexual orientation] by a Washington & Lee student while attending a party which a Washington & Lee fraternity hosted," and his harasser in this instance was a member of said fraternity. *Id.* All three instances involved people referring to Plaintiff by a slur derogatory to his sexual orientation. Compl. at 2 ¶¶ 10–12.

While a university student, Plaintiff attempted suicide because of "loneliness, exclusion from the social events that the university and its fraternities and sororities offered, and a sense of being hated by the majority of students for being gay, black, and Jewish, and perhaps not deserving to hold a place at the university because of those aspects of [his identity]." *Id.* at 2 ¶ 13. Plaintiff stopped before committing suicide and called the police, "who escorted [him] out of the university building" where he was planning suicide. *Id.* at 2 ¶ 14. Police escorted him to the university counseling building, and he met with a university counselor who took his suicide note into her possession, told him to check in with her the next morning, and sent him home. *Id.* at 2 ¶¶ 15–16. Plaintiff checked in with the counselor the next day. *Id.* at 2 ¶ 17.

Plaintiff "withdrew from the university only a few months before graduating and suffered financial and emotional damages," due to the events discussed. *Id.* at 2 ¶ 18.

In July 2021, Plaintiff contacted the university's Title IX coordinator, leaving a complaint with the coordinator about what he had experienced. *Id.* at 2 ¶ 19.

## Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The purpose of a

Rule 12(b)(6) motion is to "test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King*, 825 F.3d at 214 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). "Thus, when considering a motion to dismiss, a court must consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020). Nevertheless, only facts can render a claim for relief plausible. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. The plaintiff must plead enough factual content to nudge a claim across the border from mere possibility to plausibility. *Id.* at 570; *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## Analysis

### A. Plaintiff's Race and Religion-Related Claims Are Time-Barred

Plaintiff puts forward several arguments related to racial and religious discrimination. For example, Plaintiff alleges that "[t]he university used characteristics of diversity, like sexual orientation, race, and religion to create a diverse student body for its own benefit, regardless of whether or not minority students would be accepted by the majority student body," which "resulted in the majority student body harassing minority students." Compl. at 3 ¶¶ 2–3. Plaintiff asserts that "[t]he university acted with gross negligence when it actively sought to increase diversity on its campus without preparing its campus and typical student for the newly diverse students." *Id.* at 3 ¶ 4. Further, Plaintiff alleges that "[t]he university has a concrete history of bigotry against minorities like African Americans and gay people," and "[t]he university did not inform [Plaintiff] or [Plaintiff's] parents that it has a history of bigotry against black and gay

students when [Plaintiff] enrolled there." *Id.* at 3 ¶¶ 5–6. Additionally, Plaintiff argues that the university "acted negligently in actively recruiting a diverse student body to a locality that was not accepting of diversity," and to "a university with a strong social culture centered on American white racial purity, American Protestant traditions and values, and social expectations of heterosexuality . . . ." *Id.* at 3 ¶¶ 7–8. Plaintiff contends that "[t]he school staff could have easily predicted that students of color, religions other than Christianity, and members of the LGBT community would suffer in the environment that they create and nurture," and "[t]he school made meager, ineffective efforts at integrating these students and ensuring they could be successful in a social environment that viewed them as a threat and an outsider," though "[t]he school should have noticed they were failing at integrating these students and taken action that resulted in social integration." *Id.* at 3 ¶¶ 9–10.

Plaintiff's complaint arises solely under Title IX. Dkt. 1 at 1. Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity seeking Federal financial assistance." 20 U.S.C. § 1681(a). No similar provision in Title IX encompasses race or religion. Thus, Title IX's plain text only provides a cause of action for sex-based claims. Accordingly, to the extent Plaintiff's complaint argues racial or religious discrimination, Compl. at 3, Plaintiff fails to state a plausible Title IX claim. *Twombly*, 550 U.S. at 555–56.

Nevertheless, the Fourth Circuit has directed district courts to construe *pro se* complaints liberally, though "[i]t does not require those courts to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). As the Plaintiff has alleged facts related to racial and religious discrimination claims, the Court

considers whether a Title VI claim for racial discrimination could survive a motion to dismiss. However, such a claim is time-barred.

A district court may consider the statute of limitations—an affirmative defense—at the motion to dismiss stage when the facts establishing the defense are apparent on the face of a plaintiff's complaint. *Goodman v. Praxair*, 494 F.3d 458, 464 (4th Cir. 2007). Here, Plaintiff's complaint alleges conduct related to race and religious discrimination that occurred between 2009 and 2013—the time in which Plaintiff was a student at the university—which was between 9 and 13 years before Plaintiff filed the complaint in January 2022. Compl. at 1–2 ¶¶ 1, 18. The time between the alleged conduct and the filing of the complaint exceeds the applicable statute of limitations.

Title VI contains no express statute of limitations; however, the Fourth Circuit has held that "the state personal injury limitations period [applies] to Title VI claims." *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999). Personal injury actions must be brought in Virginia "within two years after the cause of action accrues." Va. Code § 8.01-243(A). Thus, a Title VI claim has a two-year statute of limitations in Virginia.

All racial discrimination alleged by Plaintiff occurred between 2009 and 2013. Thus, any potential accrual occurred in this timespan. Plaintiff filed this action in January 2022, more than two-years after the cause of action accrued. It follows that the statute of limitations bars a Title VI claim.

### B. Plaintiff's Title IX Claims Are Time-Barred

Plaintiff also brings sexual orientation-related discrimination claims under Title IX. In addition to the examples discussed above, Plaintiff generally asserts that "[t]he school's Title IX

process did not adequately address the lasting effects that harassment which [Plaintiff] experienced while a student had on [him] after [his] withdrawal [from the university] until the writing of this complaint, more than 10 years later." Compl. at 4 ¶ 11. Plaintiff contends that these effects include "lasting mental and emotional effects, and lost wages and career opportunities." *Id.*

As Title IX lacks an express statute of limitations, federal courts apply the most closely analogous statute of limitations under state law. *Doe v. Virginia Polytechnic Inst. and State Univ.*, 400 F. Supp. 3d 479, 494–96 (W.D. Va. 2019). In Virginia, the two-year statute of limitations for personal injury claims applies to Title IX. *Id.* Further, a Title IX claim accrues at the time of the alleged wrongdoing, whether that is a discrete act (or acts) or a pattern of conduct. *See Jennings v. Univ. of North Carolina at Chapel Hill*, 240 F. Supp. 2d 492, 499–500 (M.D.N.C. 2002); *Brown v. Am. Broadcasting Co.*, 704 F.2d 1296, 1300–01 (4th Cir. 1983) (explaining that claims for a plaintiff's personal injury in Virginia occur upon the injury but not "separately for each [new] set of damages" resulting from the same "wrongful act[s]."). It follows that Plaintiff, to avoid his claims being time-barred, had to bring the Title IX claims either within two years of each incident of harassment alleged or, if alleging a practice of harassment, within two years of the final instance of wrongdoing that can be attributed to the university. *Id.*

Plaintiff, in response to this argument, states that "[t]his suit is about the Title IX complaint process and not the original events which it is based on." Dkt. 18 at 1. On this basis, Plaintiff requests relief because the conduct Plaintiff allegedly experienced as a student resulted in him having to spend $16,000 to earn a bachelor's degree via another institution, as the

sexual harassment Plaintiff experienced at Washington & Lee caused him a three-year delay in finishing the degree. *Id.* at 2. He finished the degree in 2016. *Id.*

These allegations do not change that Title IX claims accrue at the time of the discrete acts of alleged harassment—as opposed to upon a subsequent experience or experiences of damages. *Jennings*, 240 F. Supp. 2d at 499–500; *Brown*, 704 F.2d at 1300–01. Even if Plaintiff could rely on his 2021 communications with the Title IX coordinator, as Plaintiff argues in opposition to the motion to dismiss, Dkt. 18 at 1, the 2021 communications are based in damages that Plaintiff allegedly suffered in or around 2016. *Id.* at 2. Thus, even if the 2016 expenses sufficed for statute of limitations purposes, Plaintiff still needed to bring the claim within two years—thus no later than some time in 2018.

## Conclusion

Plaintiff's claims are time-barred, so the case is dismissed.

It is so ORDERED.

The Clerk of Court is directed to send this Memorandum Opinion to all parties in the case.

Entered this 16th day of September, 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE